PETER J. BENVENUTTI (Bar No. 60566)
ROBERT A. TRODELLA, JR. (Bar No. 184081)
MICHAELINE H. CORREA (Bar No. 215215)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
E-mail: robert.trodella@hellerehrman.com
        miki.correa@@hellerehrman.com

Attorneys for chapter 7 trustee
WILLIAM A. BRANDT, JR.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re:<br><br>IMP, INC.,<br><br>        Debtor. | Bk. No. 03-55665 MM<br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF ADMINISTRATIVE CLAIM ASSERTED BY AZZAM ABDO**<br><br>[Hearing Only If Timely Requested]<br>B.L.R. 9014-1(B)(3) |

**TO THE HONORABLE MARILYN MORGAN, UNITED STATES BANKRUPTCY JUDGE, AZZAM ABDO, ALL INDIVIDUAL INVESTORS LISTED ON THE ATTACHED EXHIBIT A, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

### I.    NOTICE AND DEADLINE FOR RESPONSE

**PLEASE TAKE NOTICE THAT** William A. Brandt, Jr., the chapter 7 "Trustee" of the above referenced debtor ("IMP"), hereby files this "Motion," pursuant to rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of a

compromise and settlement agreement with Azzam Abdo ("Abdo"), in his individual capacity and as agent for the "Investors" listed on attached <u>Exhibit A</u>. The "Settlement Agreement" which this Motion seeks approval of is attached as Exhibit "A" to the Trustee's declaration, filed concurrently herewith and in support of this Motion. **The Settlement Agreement forever resolves the claims of Abdo and the Investors listed on the attached <u>Exhibit A</u> against IMP. Hence, Abdo and the Investors should thoroughly review the Settlement Agreement, the Motion and all supporting documentation to ensure they agree with the proposed resolution of their claims.**

**PLEASE TAKE FURTHER NOTICE** that the proposed Settlement Agreement resolves the Trustee's objection to the administrative claim asserted by Abdo (again, on behalf of himself and the Investors) against IMP's estate in the amount of $1,301,480.00, plus interest and attorneys' fess, which claim sought recovery of amounts loaned to IMP under a loan agreement. <u>The terms of the Settlement Agreement provide that the Trustee will pay $503,500</u> (the "Settlement Amount") from funds of IMP's estate to Abdo, as agent to the Investors, in full and final settlement of the administrative claim, in exchange for releases among Abdo and the Investors, on the one hand, and the Trustee on the other hand. The settlement payment will be made as follows: (i) $52,500, representing a portion of the legal fees Abdo incurred in pursuing the administrative claim, will be paid directly to Abdo's counsel, and (ii) the balance of $451,000 will be distributed by the Trustee pro rata to the Investors. Finally, should Abdo or any of the Investors provide cancelled check(s) and other evidence sufficient to prove that Abdo and/or the Investors contributed up to an additional $30,018 in post-petition funds to IMP (the "Untraced Funds"), the Trustee shall pay 70% of that "proved-up" portion of the Untraced Funds to the Investors, including anyone else that is a party to Abdo's administrative claim if such party is shown to have paid any portion of the Untraced Funds, though then at a reduced rate as described in the Settlement Agreement (but in no event to Abdo or his wife, Pearl Abdo).

This Motion is brought pursuant to Local Rule 9014-1(b)(3) of the Bankruptcy Local Rules ("B.L.R.") for the United States District Court for the Northern District of California,

which authorizes the relief requested herein without a hearing upon certain conditions set forth below.

## II. PROCEDURE AND DEADLINES FOR REQUESTING A HEARING

Pursuant to B.L.R. 9014-1(b)(3), anyone wishing to object to or request a hearing on this Motion must, on or before twenty (20) calendar days after the date this Motion was mailed, file a written request for hearing and serve it on the United States Trustee, the Trustee, and respective counsel to the Trustee and Abdo (at the above address for Trustee's counsel, and to Sedgwick, Detert, Moran & Arnold LLP, c/o Tara Condon, Esq., One Market Plaza, Steuart Tower, 8th Floor, San Francisco, CA 94105, for Abdo's). Any request for a hearing must be accompanied by declarations or memoranda of law the objecting party wishes to have this Court consider in support of its position.

If no objection or request for a hearing is timely filed, this Court may enter an order granting the Motion. If an objection or a request for hearing is timely filed, the Trustee will give at least ten (10) days written notice of hearing to the objecting or requesting party.

## III. JURISDICTION

This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. sections 157 and 1334. This is a "core" proceeding pursuant to the provisions of section 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. sections 1408 and 1409.

## IV. FACTUAL BACKGROUND

This case commenced on September 2, 2003 when IMP filed a voluntary chapter 11 petition. IMP continued as a debtor in possession until January 29, 2004, when this Court entered its order appointing the Trustee as IMP's chapter 11 trustee. On April 7, 2005, the Court converted the Bankruptcy Case from chapter 11 to chapter 7, and thereafter appointed the Trustee as IMP's chapter 7 trustee.

On September 18, 2003, IMP filed its Motion to Borrow Monies (the "DIP Financing Motion"). The DIP Financing Motion sought Court approval of a September 3, 2003 "Loan

Agreement,"[1] between IMP and Abdo (on behalf of himself and as agent for certain individual investors), by which Abdo agreed to raise up to $1.5 million for IMP in exchange for IMP's obligation, *inter alia*, to pay compound interest to Abdo on funds raised at an annual rate of 10%, or to convert such funds to IMP common stock at Abdo's request and at his sole discretion.[2] Teamasia Semiconductor (India) Ltd. ("TSIL") filed an objection to the DIP Financing Motion.

At the October 3, 2003 hearing on the DIP Financing Motion (the "October Hearing"), IMP and TSIL stipulated that IMP could borrow funds sufficient to fund IMP's operations for the months of September and October 2003 (per an agreed budget). The stipulation memorializing that agreement was submitted to and approved by the Court on October 21, 2003 (the "Financing Order"). That order provides:

> [T]he Debtor is authorized to enter into the described credit facility on the terms and for the purposes described in the [DIP Financing Motion], and may borrow funds consistent with the budget attached hereto as Exhibit B, for September 2003 and October 2003, plus the $200,000[3] trust account deposit sum, with further hearing on Debtor's motion to borrow continued to November 7, 2003 at 11:00 a.m.

Based upon available records (which are not the model of thoroughness), the Trustee has been unable to establish the extent to which the loan amounts were in fact used to satisfy the budgeted items. The September 2003 monthly operating report filed with the Court on October 20, 2003, for example, reflects that certain budgeted expenses such as payroll, were not paid in full. Nevertheless, it appears that a significant portion of the budgeted items was satisfied by the loaned amounts.

The deadline to file administrative claims, other than claims of the estate's professionals, was August 2, 2004. Abdo filed his and the Investors' administrative claim on July 30, 2004, based on Bankruptcy Code section 503(b)(1)(A), in the amount of

---

[1] The DIP Financing Motion was filed one day after the Petition Date.

[2] Exhibit 1 to the Loan Agreement provides: "At the sole discretion of ABDO, stock certificates shall be issued in the name given by ABDO to IMP at later time."

[3] The Financing Order contemplated that $200,000 of the ABDO borrowings would be placed in a trust account as security for equipment that was to be shipped to IMP's Chinese joint venture in conjunction with those borrowings.

Heller Ehrman LLP

$1,301,480, plus interest, penalties, indemnification and attorneys' fees, all in connection with the Loan Agreement, and the monies loaned to IMP thereunder (the "Abdo Claim").

In addition to Abdo (and the Investors), "other investors" that purported to lend money to IMP through the Loan Agreement filed separate claims. Stated differently, while Abdo served as the agent for all investors under the Loan Agreement, certain other investors chose to file administrative claims separate from the Abdo Claim, though, of course, they were grounded on the same operative facts and theories.[4]

On September 14, 2004, the Trustee filed an omnibus objection to the administrative claims of Abdo, the Investors, and the other investors. That objection argued that the claims: (i) were duplicative (*i.e.*, vis-à-vis Abdo and the other investors); (ii) improperly sought administrative status for amounts loaned pre-petition (that is, while the Loan Agreement was approved post-petition, at least a portion of the loaned amounts was received within a few days before the Petition Date); and (iii) sought administrative priority for amounts not used in accordance with the Court-approved budget. In addition, and perhaps most important, the Trustee's objection focused on the fact that his investigations demonstrated that Abdo and his wife, Pearl Abdo, received at least $365,000 in

---

[4] These other investors are represented by the Binder & Malter firm (Abdo is represented by the Sedgwick firm). The claims of the other investors have also been settled and are the subject of a separate settlement agreement and Bankruptcy Rule 9019 motion, which have been filed concurrently herewith. These other investors, and their claims, are listed as follows:

| Date Filed | Investor Name | Claim Amount |
|---|---|---|
| July 29, 2004 | Wu BiXia aka Winnie Ng | $100,000, plus interest |
| July 23, 2004 | George G. Ghorbanian | $10,000, plus interest |
| July 29, 2004 | Chin-Sheng Miao | $30,000, plus interest |
| July 29, 2004 | Ching T. Young and Shu H. Young | $45,000, plus interest |
| July 29, 2004 | Eric S. Young | $43,000, plus interest |
| July 29, 2004 | Lester S. Young | $22,000, plus interest |
| July 29, 2004 | Anny Ting | $5,000, plus interest |
| July 29, 2004 | Eric Chiang Miao | $15,000, plus interest |

Heller Ehrman LLP

unauthorized post-petition transfers, which at best would reduce the total claim dollar-for-dollar, and worse, would subject Abdo and his wife to an avoidance action.[5]

On October 22, 2004, Abdo filed his response. That response asserted, among other things, that Abdo provided substantial, valuable consulting services to IMP sufficient to negate any unauthorized post-petition transfer cause(s) of action and that in addition to the Court approved loans, and that he was entitled to interest, attorney's fees and penalties as set forth in the Loan Agreement. Abdo also asserted that the Court had earlier approved the Loan Agreement—and hence administrative priority was appropriate—by its October 21, 2003 minute order, and that all or at least a substantial majority of the loan proceeds was used in accordance with the Court-approved budget.

Thereafter, the Trustee commenced settlement discussions and informal discovery with Abdo (and separately, with the other investors). The Trustee required that Abdo provide evidence that the loans: (i) came from the Investors; (ii) were received by IMP post-petition; and (iii) were applied consistent with the budget. Through that exercise, Abdo and the other investors were able to substantiate that IMP received all but $30,018, and that a substantial portion of those funds was likely used by IMP in accord with the budget.[6]

After this showing the Trustee was left to decide in his business judgment whether it was in the best interest of the estate to finalize a settlement with Abdo and the Investors, or instead to litigate the claim and possibly pursue an avoidance action against Abdo for the post-petition transfers that had come to light. The efforts of Abdo and his counsel clearly showed that the loaned amounts were in fact made, that they were approved by the Court, and that IMP used these funds post-petition. In addition, the Loan Agreement's terms entitled Abdo to a significant amount of interest (and attorneys' fees). So viewed, the reality the Trustee faced was that even if he litigated the Abdo Claim, the Investors could

---

[5] The Trustee later determined that of this amount, $200,000 was immediately re-deposited into other IMP bank accounts to satisfy payroll, but that $197,500 was retained by Abdo (of that amount, $47,500 was apparently applied as repayment to Pearl Abdo for her portion of the loan).
[6] This evidence largely consisted of cancelled checks, and contained the amounts paid by each individual investor, the dates of their deposits, and that the funds went into the estate.

potentially succeed in realizing payment on the entirety of their claim. And any avoidance action against Abdo would carry attendant costs and collection uncertainty. The better solution in the Trustee's business judgment was to settle the claim by eliminating all amounts that Abdo (and his wife) received post-petition, eliminating any claim for interest, eliminating any funds received by IMP pre-petition, and from that figure constructing a discount to effectively (if not precisely) take into account that no one will ever know with mathematical certainty to what extent the monies received were fully used for the budgeted items.

After discussing the proposed settlement with the United States Trustee, the settlement bases were further refined such that neither Abdo nor his wife would receive any amount from the settlement, and the settlement funds (after deducting a capped amount in attorneys' fees paid directly to Abdo's counsel), would be made directly by the Trustee to the Investors. All of this was ultimately agreed to by Abdo with salient terms of the settlement as summarized below.[7]

The Settlement Agreement is subject to Court approval and provides in pertinent part that the Trustee will pay the Settlement Amount of $503,500,[8] as follows, in full and complete satisfaction of the Abdo Claim:

(1) Abdo agrees to cap his legal fees, which are purportedly in excess of $100,000, at $52,500. The Trustee will pay that capped amount to Abdo's counsel within five business days of the Effective Date of the Settlement Agreement.

(2) The Trustee shall send checks in the amount of each Investor's pro rata share of the remaining portion of the Settlement Amount in the aggregate

---

[7] To the extent the summary contained in this Motion conflicts with the actual terms of the settlement contained in the Settlement Agreement, the latter shall prevail.

[8] The Settlement Amount is calculated as follows. Total claim requested of $1,301,480, less [(i) Unauthorized transfers of $197,500, (ii) claims duplicative of the other investors of $294,980, (iii) amounts receive pre-petition of $180,000, (iv) yet to be traced funds of $30,018, totaling 702,498] = $598,982. Discounted further in light of uncertainty whether all amounts used for budgeted items. Agreed Settlement Amount = $503,500.

amount of $451,000 (*i.e.*, after deduction of the Attorneys' Fees), which pro rata shares are listed on Exhibit D to the Settlement Agreement. Neither Abdo, nor Pearl Abdo is entitled to any distribution under the Settlement Agreement.

(3) Abdo and the Investors to release the Trustee and the estate from any and all claims that have been or could be brought by them against the Trustee, IMP or its estate.

(4) The Trustee and the estate to release Abdo and his wife from any claims relating to the Abdo Claim (and any avoidance actions relating thereto).

Finally, should Abdo or the Investors provide evidence in the form of cancelled check(s) sufficient to prove that any claimant under the Abdo Claim contributed up to an additional $30,018 in *post-petition* funds to IMP, the Trustee agrees—without further Court approval—to pay 70% of that amount directly to the Investors pro rata (but not to Abdo or Pearl Abdo), based upon the same percentage shares set forth on Exhibit D attached to the Settlement Agreement (though to the extent these include investors listed on the Abdo Claim, but who are not Investors because their investments were not previously proved-up, these "new" investors would receive an amount that reflects the fact that the Investors had a portion of their recovery reduced by attorneys' fees, such that all receive equally).

## V. LEGAL AUTHORITY

A court may approve a settlement between a debtor or trustee and a third party, after notice and a hearing. Fed. R. Bankr. P. 9019, 2002. The requirement of notice and hearing is met by giving notice and an opportunity for hearing. B.L.R. 9014-1(b)(3).

The criteria for approval of settlements is well settled. *See Marin v. Kane (In re A&C Properties)*, 784 F.2d 1377 (9th Cir.), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986). To be approved, a proposed settlement must be fair and equitable to the estate, upon a consideration of (a) the probability of success in litigation, (b) the difficulties to be encountered, if any, in collecting on a litigation success, (c) the complexity, expense, inconvenience, and delay that prosecuting the litigation will entail, and (d) the interests of

the creditors and a proper deference to the reasonable views they have on the matter. *In re A&C Properties*, 784 F.2d at 1381; *accord Woodson v. Fireman's Fund Insur. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

The settlement proposed here satisfies these criteria. While the Trustee is confident the estate could prevail on at least a portion of the objection to the Abdo Claim, he cannot be certain that Abdo (or more precisely, the Investors) would not recover an amount in excess of the proposed settlement in light of the known facts, *i.e.*, that the Court approved the loan transaction, and that the funds were in fact loaned to and used by IMP post-petition. Abdo would also seek recovery of the interest he had been promised under the Loan Agreement (though the Trustee would seek to equitably subordinate those amounts). Simply stated, and as with any settlement, there exists risk that a judgment would result in a higher recovery to Abdo and the Investors than under the Settlement Amount, and in any event, litigating that action would prove costly. The reality is, however, that the proposed settlement takes into account, and reduces by, all "questionable" items Abdo and the Investors had sought. Though the Court arguably implied under its minute order that pre-petition amounts were nonetheless entitled to administrative priority, these have been eliminated from the Settlement Amount. So too have the post-petition transfers to Abdo and his wife. No interest has been allowed. Abdo only receives his out-of-pocket attorneys' fees (paid to his attorneys), and then, only at a capped amount. Viewed from any reasoned perspective from creditors, the proposed settlement is in their best interests and should appropriately be approved.

The Trustee is informed and believes that the Office of the United States Trustee has reviewed the Settlement Agreement and supports the relief requested in this Motion.

/ / / /

/ / / /

/ / / /

- 9 -

## VI. CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order approving this Motion and the underlying Settlement Agreement.

Respectfully submitted,

DATED: February 15, 2006              HELLER EHRMAN LLP


By: /s/ Michaeline H. Correa
Michaeline H. Correa
Attorneys for chapter 7 trustee,
William A. Brandt, Jr.

SF 1186998 v3
(40952.0001)