PETER J. BENVENUTTI (Bar No. 60566)
ROBERT A. TRODELLA, JR. (Bar No. 184081)
MICHAELINE H. CORREA (Bar No. 215215)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
E-mail: robert.trodella@hellerehrman.com
       miki.correa@@hellerehrman.com

Attorneys for chapter 7 trustee
WILLIAM A. BRANDT, JR.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In Re:

IMP, INC.,

    Debtor.

Bk. No. 03-55665 MM
Chapter 7

**DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF ADMINISTRATIVE CLAIM ASSERTED BY AZZAM ABDO**

[Hearing Only If Timely Requested]
B.L.R. 9014-1(B)(3)

I, William A. Brandt, Jr., declare as follows:

1. I am the duly appointed and acting chapter 7 trustee (the "Trustee") of debtor IMP, Inc. (the "Debtor" or "IMP").

2. I make this declaration in support of the Motion for Approval of a Compromise of Administrative Claim Asserted by Azzam Abdo, filed concurrently herewith (the "Motion"), which seeks an order authorizing me to enter into and perform

Case: 03-55665   Doc# 627   Filed: 02/15/06   Entered: 02/15/06 16:20:25   Page 1 of 6

under the Settlement Agreement between me, in my capacity as Trustee, on the one hand, and Azzam Abdo in his individual capacity and as agent for the "Investors" described in the Motion, on the other hand. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

3. This case commenced on September 2, 2003 when IMP filed a voluntary chapter 11 petition. IMP continued as a debtor in possession until January 29, 2004, when this Court entered its order appointing me as IMP's chapter 11 trustee. On April 7, 2005, the Court converted the Bankruptcy Case from chapter 11 to chapter 7, and thereafter appointed me as IMP's chapter 7 trustee.

4. On September 18, 2003, IMP filed its Motion to Borrow Monies (the "DIP Financing Motion"). The DIP Financing Motion sought Court approval of a September 3, 2003 "Loan Agreement,"[1] between IMP and Abdo (on behalf of himself and as agent for certain individual investors), by which Abdo agreed to raise up to $1.5 million for IMP in exchange for IMP's obligation, *inter alia*, to pay compound interest to Abdo on funds raised at an annual rate of 10%, or to convert such funds to IMP common stock at Abdo's request and at his sole discretion.[2] Teamasia Semiconductor (India) Ltd. ("TSIL") filed an objection to the DIP Financing Motion.

5. At the October 3, 2003 hearing on the DIP Financing Motion (the "October Hearing"), IMP and TSIL stipulated that IMP could borrow funds sufficient to fund IMP's operations for the months of September and October 2003 (per an agreed budget). The stipulation memorializing that agreement was submitted to and approved by the Court on October 21, 2003 (the "Financing Order"). That order provides:

> [T]he Debtor is authorized to enter into the described credit facility on the terms and for the purposes described in the [DIP Financing Motion], and may borrow funds consistent with the budget attached hereto as Exhibit B, for September 2003 and October 2003, plus the

---

[1] The DIP Financing Motion was filed one day after the Petition Date.

[2] Exhibit 1 to the Loan Agreement provides: "At the sole discretion of ABDO, stock certificates shall be issued in the name given by ABDO to IMP at later time."

- 2 -

DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF ADMINISTRATIVE CLAIM ASSERTED BY AZZAM ABDO
BK. NO. 03-55665MM

$200,000[3] trust account deposit sum, with further hearing on Debtor's motion to borrow continued to November 7, 2003 at 11:00 a.m.

6. Based upon available records (which are not the model of thoroughness), I have been unable to establish the extent to which the loan amounts were in fact used to satisfy the budgeted items. The September 2003 monthly operating report filed with the Court on October 20, 2003, for example, reflects that certain budgeted expenses such as payroll, were not paid in full. Nevertheless, it appears that a significant portion of the budgeted items was satisfied by the loaned amounts.

7. The deadline to file administrative claims, other than claims of the estate's professionals, was August 2, 2004. Abdo filed his and the Investors' administrative claim on July 30, 2004, based on Bankruptcy Code section 503(b)(1)(A), in the amount of $1,301,480, plus interest, penalties, indemnification and attorneys' fees, all in connection with the Loan Agreement, and the monies loaned to IMP thereunder (the "Abdo Claim").

8. In addition to Abdo (and the Investors), "other investors" that purported to lend money to IMP through the Loan Agreement filed separate claims. Stated differently, while Abdo served as the agent for all investors under the Loan Agreement, certain other investors chose to file administrative claims separate from the Abdo Claim, though, of course, they were grounded on the same operative facts and theories.[4]

---

[3] The Financing Order contemplated that $200,000 of the ABDO borrowings would be placed in a trust account as security for equipment that was to be shipped to IMP's Chinese joint venture in conjunction with those borrowings.

[4] These other investors are represented by the Binder & Malter firm (Abdo is represented by the Sedgwick firm). The claims of the other investors have also been settled and are the subject of a separate settlement agreement and Bankruptcy Rule 9019 motion, which have been filed concurrently herewith. These other investors, and their claims, are listed as follows:

| Date Filed | Investor Name | Claim Amount |
|---|---|---|
| July 29, 2004 | Wu BiXia aka Winnie Ng | $100,000, plus interest |
| July 23, 2004 | George G. Ghorbanian | $10,000, plus interest |
| July 29, 2004 | Chin-Sheng Miao | $30,000, plus interest |
| July 29, 2004 | Ching T. Young and Shu H. Young | $45,000, plus interest |
| July 29, 2004 | Eric S. Young | $43,000, plus interest |
| July 29, 2004 | Lester S. Young | $22,000, plus interest |
| July 29, 2004 | Anny Ting | $5,000, plus interest |

- 3 -

*(Footnote continued)*

DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF ADMINISTRATIVE CLAIM ASSERTED BY AZZAM ABDO
BK. NO. 03-55665MM

Case: 03-55665    Doc# 627    Filed: 02/15/06    Entered: 02/15/06 16:20:25    Page 3 of 6

Heller Ehrman LLP

9. On September 14, 2004, I filed an omnibus objection to the administrative claims of Abdo, the Investors, and the other investors. That objection argued that the claims: (i) were duplicative (*i.e.*, vis-à-vis Abdo and the other investors); (ii) improperly sought administrative status for amounts loaned pre-petition (that is, while the Loan Agreement was approved post-petition, at least a portion of the loaned amounts was received within a few days before the Petition Date); and (iii) sought administrative priority for amounts not used in accordance with the Court-approved budget. In addition, and perhaps most important, my objection focused on the fact that my investigations demonstrated that Abdo and his wife, Pearl Abdo, received at least $365,000 in unauthorized post-petition transfers, which at best would reduce the total claim dollar-for-dollar, and worse, would subject Abdo and his wife to an avoidance action.[5]

10. On October 22, 2004, Abdo filed his response. That response asserted, among other things, that Abdo provided substantial, valuable consulting services to IMP sufficient to negate any unauthorized post-petition transfer cause(s) of action and that in addition to the Court approved loans, and that he was entitled to interest, attorney's fees and penalties as set forth in the Loan Agreement. Abdo also asserted that the Court had earlier approved the Loan Agreement—and hence administrative priority was appropriate—by its October 21, 2003 minute order, and that all or at least a substantial majority of the loan proceeds was used in accordance with the Court-approved budget.

11. Thereafter, I commenced settlement discussions and informal discovery with Abdo (and separately, with the other investors). I required that Abdo provide evidence that the loans: (i) came from the Investors; (ii) were received by IMP post-petition; and (iii) were applied consistent with the budget. Through that exercise, Abdo and the other

| July 29, 2004 | Eric Chiang Miao | $15,000, plus interest |

---

[5] I later determined that of this amount, $200,000 was immediately re-deposited into other IMP bank accounts to satisfy payroll, but that $197,500 was retained by Abdo (of that amount, $47,500 was apparently applied as repayment to Pearl Abdo for her portion of the loan).

- 4 -

DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF ADMINISTRATIVE CLAIM ASSERTED BY AZZAM ABDO
BK. NO. 03-55665MM

Case 03-55665    Doc# 627    Filed: 02/15/06    Entered: 02/15/06 16:20:25    Page 4 of 6

Heller
Ehrman LLP

investors were able to substantiate that IMP received all but $30,018, and that a substantial portion of those funds was likely used by IMP in accord with the budget.[6]

12. After this showing, I was left to use my business judgment to decide whether it was in the best interest of the estate to finalize a settlement with Abdo and the Investors, or instead to litigate the claim and possibly pursue an avoidance action against Abdo for the post-petition transfers that had come to light. The efforts of Abdo and his counsel clearly showed that the loaned amounts were in fact made, that they were approved by the Court, and that IMP used these funds post-petition. In addition, the Loan Agreement's terms entitled Abdo to a significant amount of interest (and attorneys' fees). So viewed, I queried whether even if I litigated the Abdo Claim, the Investors could potentially succeed in realizing payment on the entirety of their claim, and further recognized that any avoidance action against Abdo would carry attendant costs and collection uncertainty. Considering these factors, I believed it was in the best interests of the estate to settle the claim by eliminating all amounts that Abdo (and his wife) received post-petition, eliminating any claim for interest, eliminating any funds received by IMP pre-petition, and from that figure constructing a discount to effectively (if not precisely) take into account that no one will ever know with mathematical certainty to what extent the monies received were fully used for the budgeted items.

13. After discussing the proposed settlement with the United States Trustee, the settlement bases were further refined such that neither Abdo, nor his wife would receive any amount from the settlement, and the settlement funds (after deducting a capped amount in attorneys' fees paid directly to Abdo's counsel), would be made directly by me (from the Debtor's funds) to the Investors. All of this was ultimately agreed to by Abdo with salient terms of the Settlement Agreement.

14. I am informed and believe that the Office of the United States Trustee has reviewed the Settlement Agreement and supports the relief requested in this Motion.

---

[6] This evidence largely consisted of cancelled checks, and contained the amounts paid by each individual investor, the dates of their deposits, and that the funds went into the estate.

- 5 -

DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF ADMINISTRATIVE CLAIM ASSERTED BY AZZAM ABDO
BK. NO. 03-55665MM

Heller Ehrman LLP

| | |
|---|---|
| 1 | I declare under penalty of perjury under the laws of the United States of America that |
| 2 | the foregoing is true and correct. Executed this 7th day of February, 2006. |

*/s/ William A. Brandt, Jr.*
William A. Brandt, Jr., Chapter 7 Trustee

- 6 -

Heller Ehrman LLP

DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF ADMINISTRATIVE CLAIM ASSERTED BY AZZAM ABDO
BK. NO. 03-55665MM